[No. 14087.  Department One.  June 30, 1917.]

## M. J. Droppelman, *Appellant*, v. Port of Seattle, *Respondent*.[1]

Municipal Corporations—Improvements—Contracts—Construction—Demurrage—Defenses.  A contractor for port terminals cannot escape the payment of demurrage for delay caused by another contractor, where the contract signed by him provided that the port should not be answerable to one contractor for any damage or loss suffered through the fault of any other contractor; and it is immaterial that such clause was not in the specifications upon which he submitted his bid.

Same.  A contractor for port terminals cannot escape the payment of demurrage for delay caused by the unwarranted rejection of material by an inspector, where he had signed an agreement with the port in settlement of the matter expressly declaring that the port was not responsible for the delay.

Same.  Where, upon a dispute as to demurrage due from a contractor for port terminals, the parties agreed upon the stipulated damages to that date, in order to enable the contractor to go ahead with the work, payments thereafter made on the contract do not waive the demurrage then agreed upon.

Same — Demurrage — Delay — Evidence.  Upon an issue as to whether a contractor was responsible for delay whereby demurrage attached, the evidence of a former engineer who had resigned, to the effect that he would have advised waiver of the demurrage, on a "broad basis of general human fairness," is immaterial, especially where his testimony indicates that the contractor was responsible for the delay.

Appeal from a judgment of the superior court for King county, Albertson, J., entered May 15, 1916, upon findings in favor of the defendant, in an action on contract, tried to the court.  Affirmed.

*Tucker & Hyland,* for appellant.

*C. J. France,* for respondent.

Morris, J.—In May, 1913, Hans Pederson entered into a contract with the port commissioners to erect the superstruc-

[1]Reported in 166 Pac. 248.

ture of the Smith Cove terminal. The contract provided that the work was to be completed in two hundred and ten days from the date of notification to commence work, and in case not so completed, the contractor agreed to pay as liquidated damages $100 for each day the completion was delayed beyond the two hundred and ten days. Pederson was notified to commence work June 2, 1913, and his time within which to complete the contract expired December 29, 1913. The work was not completed until August 5, 1914. On March 10, 1914, the work was approximately only sixty per cent completed, and Pederson was one hundred and fifty-five days behind in his contract. To settle any dispute as to the cause and responsibility for this delay, the following contract was then entered into:

"This memorandum of agreement entered into this 10th day of March, 1914, between the port commission of the Port of Seattle, party of the first part, and Hans Pederson, the contractor, party of the second part;

"Witnesseth: That, whereas, under date of May 28, 1913, the port commission entered into a contract with the contractor for furnishing all material and performing all labor for the Smith Cove Improvement, subdivision No. 2;

"Whereas, the work so to be performed has not been performed within the time fixed in the contract for the performance of the same and a dispute has arisen between the port commission and the contractor as to the responsibility for such delay, the contractor not claiming that the delay is due to the port, but that it is due to causes which, under the terms of the contract, excuse him for the delay, and the port commission claiming that the contractor alone is responsible for the delay;

"It is now agreed between the port commission and the contractor as follows:

"First—That the period of delay in dispute is thirty days and the liquidated damages therefor is three thousand dollars.

"Second—That the contractor shall proceed with the work under the contract, and the time for the completion of the contract is hereby extended up to and including the thirtieth day after the work on said improvement under subdivision one shall be completed.

"Third—That the sum of three thousand dollars shall be deducted from the estimate now about to be paid, the date of said estimate being February 28, 1914, and the amount thereof $21,663.13, and that said sum of three thousand dollars shall be retained by the port commission until the final settlement with the port commission under said contract, at which time the matter shall be determined between the port commission and the said contractor as to the cause of the delay, as aforesaid, and if it shall be determined that the contractor is responsible for such delay, the port commission shall retain such sum of three thousand dollars out of such final settlement, otherwise it shall be included in such final settlement with the contractor.

"Fourth—Nothing herein contained shall impair other provisions of the contract or affect the rights or remedies of the port under the contract as the work shall proceed."

After the completion of the contract, Pederson presented a claim to the port commissioners for $3,000, claiming he was in nowise responsible for the delay. The claim was denied, Pederson assigned his interest therein to appellant, and this suit was commenced. The lower court found that Pederson was responsible for delay in excess of thirty days prior to March 10th, and denied recovery.

Appellant's first contention is one of fact, claiming that, under the evidence, the delay was caused (a) by the Puget Sound Bridge & Dredging Company, having the contract for dredging and filling in connection with the terminal structure; (b) by delaying notice to the dredging company to commence work; (c) by the act of an inspector in rejecting materials. The second contention is one of law, that, on March 10, 1914, the date of the agreement fixing liquidated damages, the Port of Seattle had waived all claims for damages growing out of delay. Section 27 of the specifications for the work provides that:

"The Port of Seattle shall not be answerable to one contractor for any damage or loss he may suffer through the fault of any other contractor or subcontractor of another contractor."

If this clause is to be given effect, it is evident that Pederson cannot, as against the Port of Seattle, claim liability for any loss sustained by him from the dredging company. As a matter of law, this is not disputed, but the claim is advanced that this provision was not in the specifications sent to Pederson upon which he based his bid, and that he had no knowledge of its existence until it was called to his attention later on by the commissioners. Whatever may be the fact as to whether or not this provision was in the specifications upon which Pederson based his bid, it was unquestionably a part of the contract when he signed it, and, as such, he was bound by it. Irrespective of this, we fail to find any warrant in the evidence for finding that the dredging company delayed Pederson. Under his contract, Pederson was to construct sheet piling bulkheads from the inner end of the pier outward to a point twenty feet below city datum. The dredging company was then to fill in between the bulkheads to a required elevation, upon which the superstructure was to be erected. Pederson was dilatory in complying with this provision of his contract and had not completed it when the dredging company was ordered upon the work. The delay in notifying the dredging company to commence its work in no manner injured Pederson, as his part of the work was not ready when the port commissioners notified the dredging company to proceed with its contract.

As to the claim of delay by reason of the unwarranted rejection of materials by an inspector, the only answer necessary is found in the agreement of March 10th, wherein it was expressly decided that the port commission was not responsible for the delay. The only dispute between the parties is as to whether or not Pederson's delay is excusable.

The last contention is that of waiver in law. There is neither fact nor law upon which this claim can be sustained. Appellant relies upon *Erickson v. Green,* 47 Wash. 613, 92 Pac. 449, and *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837. In each of those cases the payments held to constitute

waiver were made after the completion of the contract.   In
this case the port commissioners refused to make estimates
and payments to Pederson subsequent to December 29, 1913,
until after the agreement of March 10, 1914, when, as re-
cited in the agreement, the estimate made to February 28th,
amounting to $21,663.13, was paid.   Under these facts there
can be no waiver.   Up to December 29th, Pederson was within
the time fixed in the contract, though backward in his work.
Any waiver, therefore, must have been by reason of payments
subsequent to that date.   There was none until by agreement
of March 10th the parties fixed the liquidated damages in
order that Pederson might go ahead and complete his con-
tract, which apparently he otherwise could not have done, as
he was then behind one hundred and fifty-five days facing a
demurrage of $15,500, with $100 to be added for each addi-
tional day to be consumed before the contract could be com-
pleted, and with the refusal of the port to pay any further
estimates.   Under these circumstances and to relieve himself
from this situation, he entered into the agreement of March
10th, one manifestly to his advantage and without which
it is probable the contract could not have been completed.

Appellant places great stress upon the testimony of Paul P.
Whitham, who, during a part of the time, was chief engi-
neer of the Port, but who resigned prior to the final settle-
ment, and for this reason took no part in the question of de-
murrage to be charged.   Whitham testified, in response to
an inquiry as to whether or not he believed that $3,000
should be charged against Pederson, that while, under its
contract, the Port could demand the $3,000, in view of all
the circumstances, and "on rather a broad basis of general
human fairness," he would have been disposed, had the mat-
ter rested upon him, to have recommended the return of the
$3,000.   Whitham's conclusion as to his probable action in
the matter is clearly not material.   He was not in any of-
ficial position that would make his opinion binding upon the
Port, nor was it bound by his act.   Whitham's testimony, on

the whole, is rather to the effect that Pederson was responsible for the delay.   In response to a question by the court as to whether or not Pederson was at fault for the delay and that it was not caused by his act or want of diligence, Whitham answered:

"No, I do not say that.   Mr. Pederson, of course, was the primary contractor, and his agents mismanaged the thing during the early part of the summer of 1913 and on into the fall; and later, after Mr. Pederson took charge of it, of course he reorganized it and carried it on in better shape, and the opinion I expressed was only on the grounds that certain difficulties that he had been up against, and the thing had suffered, perhaps, on account of the acts of agents and otherwise, that I had in mind that outside of the rights of the contract, on the basis of a fair and human equity, that I would make a suggestion or recommendation to the port commission, that he be relieved of that three thousand dollars."

The truth of the matter is that a subcontractor of Pederson, who undertook to put in the sheet piling for the bulkhead during October and November, 1913, was incompetent to handle the work.   The incompetency and incident delay of this contractor's methods became so pronounced that Pederson terminated his contract and called upon his bondsman to make good his default.   Other delays were occasioned by the dilatory methods of those whom Pederson placed in charge of the work during his absence in Europe from June to October, 1913.   These causes, as to which Pederson cannot excuse his liability, would represent more than the thirty days he was charged with, and justified the finding of the chief engineer who succeeded Whitham that Pederson was responsible and should be charged with the $3,000.

We can reach no other conclusion from the record than that the lower court was correct in its findings, and the judgment is affirmed.

ELLIS, C. J., CHADWICK, MAIN, and WEBSTER, JJ., concur.